MONTCLAIR WATER COMPANY, PROSECUTOR, v. TOWN
OF MONTCLAIR, DEFENDANT.

Argued February 21, 1923—Decided July 23, 1923.

1. Chapter 62 of the laws of 1920 (*Pamph. L., p.* 111) construed
to be an amendment to section 2 of article 32 of the act entitled
"An act concerning municipalities," approved March twenty-
seventh, one thousand nine hundred and seventeen (*Pamph. L.*
1917, *p.* 319), instead of an amendment to section 2 of article
33 of said act.

2. Chapter 62 of the laws of 1920 (*Pamph. L., p.* 111) requires a
resolution passed by the governing body of a municipality for the
purpose of acquiring a water works system to be published in a
newspaper circulating in such municipality in order for the same
to become effective and operative.

3. Proceedings taken to condemn property of a water company
under a resolution passed by the governing body of a municipality
which was not published as required by chapter 62 of the laws
of 1920 will be set aside.

On *certiorari.*

Before Justices KALISCH, BLACK and KATZENBACH.

For the prosecutor, *Collins & Corbin (William M. Wherry,
Jr.,* and *Clement K. Corbin,* of counsel).

For the defendant, *Treacy & Milton.*

The opinion of the court was delivered by

KATZENBACH, J.    The writ in this case brings up for re-
view an order appointing commissioners to fix the compen-
sation to be paid to the Montclair Water Company for certain
lands and property of that company, in condemnation pro-
ceedings.    The town of Montclair, a municipal corporation,
desires to condemn the distribution system of the Montclair
Water Company within its corporate limits and a part of its
real estate and works.    The Montclair Water Company was
incorporated in 1887 under the act approved April 21st, 1876,
for the purpose of constructing water works to supply the

township of Montclair and such other municipalities as it could contract with lawfully. The company procures its water supply at Little Falls, where it is a part owner with five other water companies of a pumping station, filter plant and works. It has contracts with West Orange, Glen Ridge, Bloomfield and Essex county institutions to supply some of the water used by them. Some of the water used by these customers passes through the Montclair distribution system. On July 21st, 1921, the board of commissioners of the town of Montclair passed the following resolution:

"*Resolved,* That the board of commissioners of the town of Montclair, in the county of Essex, does hereby authorize the mayor of said town to offer the Montclair Water Company the sum of seven hundred thousand dollars for said company's distribution system, pumping station and appurtenances connected therewith; *provided, nevertheless,* said offer shall be conditional upon compliance with all statutes of New Jersey relating thereto; and,

"*Further resolved,* That in the event of the refusal of said water company to consider and accept said offer, the necessary steps be taken in full compliance with all statutes of New Jersey relating to the acquisition of a municipal water supply and distribution system to acquire the aforesaid system by condemnation proceedings."

This resolution was not published. On August 18th, 1921, an ordinance authorizing the issue of $750,000 of bonds for the acquisition of the property of the Montclair Water Company, sought to be condemned, was passed. This ordinance was published. On the same day as the bond ordinance was passed the board of commissioners passed a resolution asking for the appointment of commissioners to condemn the lands and property mentioned and retaining counsel to conduct the proceedings. Under date of July 22d, 1921, the mayor wrote a letter to the water company offering $700,000 for the property desired. The company wrote on the day following declining the offer. The petition for the appointment of commissioners was presented to the Chief Justice. An order appointing commissioners was made on October 15th, 1921.

The writ of *certiorari* was allowed when the order was signed.

The water company contends that the town of Montclair has no power to do what it is contemplating to do because it has failed to take the necessary preliminary steps essential to the proceeding, in that it omitted to publish the resolution providing for the condemnation of the prosecutor's property as required by chapter 62 of the laws of 1920, page 111.

The pertinent portion of this act reads as follows: "Section 2 of article 33 of the act of which this act is an amendment be and the same is hereby amended to read as follows: "2. In case any municipality which did not provide and supply its inhabitants with water by or from water works owned and operated by it at the time of the approval of this act, shall desire to acquire by purchase, lease or condemnation any existing water works system or plant, or any part thereof, for the purpose of supplying water for the public and private uses of such municipality, any resolution or ordinance providing for the same shall not become effective or operative until after the expiration of thirty days from the passage or adoption and publication thereof in a newspaper circulating in such municipality. If before the expiration of such period there be filed in the office of the municipal clerk a petition signed by legal voters of such municipality equaling in number ten per centum of the number of legal voters who voted at the last general election held for members of the general assembly in such municipality requesting that a referendum vote be taken upon such proposed action, then such resolution or ordinance shall remain inoperative and suspended until the result of such referendum be determined."

This act is an amendment to the Home Rule act of 1917. *Pamph. L., p.* 319. It purports to amend section 2 of article 33. Article 33 deals with the municipal light, heat and power plants, while article 32 deals with the subject of municipal water supply. The mistake (one of drafting or printing) in referring in the amended act to article 33 is obvious. Article 32 is intended and the amendment will be construed as applying to article 32. Section 2 of article 32 of the 1917

act reads as follows: "2. No municipality shall provide and supply water for the public and private uses of such municipality and its inhabitants until a majority of the legal voters voting at an election [which election shall be advertised, held and conducted in accordance with the general election laws of this state], shall vote so to do; *provided, however, that* this shall not apply to municipalities which, at the time of the approval of this act, shall be providing and supplying water for the public and private uses of such municipality and its inhabitants, nor to municipalities in which a majority of the legal voters voting at any election shall have theretofore voted so to do, nor to municipalities which shall have adopted any act authorizing such municipality to supply water for public and private uses. * * *."

The original act made a vote of a majority of the legal voters of a municipality the condition precedent for acquisition of a water supply by the governing body. The 1920 amendment permitted action by the governing body for the acquisition of a water supply without the voters having passed on the question, provided the voters were given an opportunity of requesting the submission of the question to popular vote. The resolution or ordinance of the governing body on the subject is not by the terms of the statute to become effective, or operative, however, until after the expiration of thirty days from the passage or adoption and publication thereof in a newspaper circulating in such municipality. It is conceded that the resolutions of July 21st, 1921, and August 18th, 1921, were not published. The town of Montclair contends that they became effective without publication, first, because the act of 1920 was not intended to change the statutory policy of requiring ordinances and not resolutions to be published, and second, sufficient notice was given by the publication of the ordinance for the issue of bonds. We are of the opinion that neither of the grounds is well taken. The act specifically states that any resolution or ordinance shall. not become effective until after * * * adoption and publication. The legislature had the power to require a resolu-

tion as well as an ordinance to be published to make it effective. The purpose of the publication was evident. It was to apprise the voters of the action taken and to offer them an opportunity of holding an election upon a matter of great public importance and involving a large outlay. To say that a resolution of this character need not be published, as required by the statute, is to set at naught the legislative will. A bond issue is not the act of purchase or condemnation. It is but a step in the procedure of meeting the obligations incurred by the acquisition of the property, whether purchased by negotiation or condemned. The principal act is the determination to acquire. This is the act which the legislature intended the voters to be apprised of. The publication of a bond ordinance is no compliance with the statute. These views make it necessary to set aside these proceedings for condemnation.

The prosecutor also raises a question which is more far-reaching than the one of procedure just considered. This is whether under the statute the town of Montclair can condemn a part only of the tangible property of the water company and none of its franchises which Montclair is seeking to do. The only power which the town of Montclair can invoke to acquire the water company's property is that contained in paragraph c of section 1, article 32 of the Home Rule act. This paragraph confers on the municipality the power to purchase by negotiation all or any part of the tangible property of a person or corporation owning water works supplying such municipality with water and all or any part of the corporate rights and franchises. It also provides for acquisition by condemnation, but in the following language, namely: "In case of any disagreement between the said municipality and the said person or persons, corporation or corporations, as to the amount of compensation to be paid, said municipality may condemn said real estate, personal property and works, and all the corporate rights, powers, franchises and privileges of said person or persons, corporation or corporations."

The prosecutor contends that the section just quoted makes it obligatory upon a municipality, if it choses to exercise the power of condemnation, to take all of its tangible property and all of its rights and franchises. The town of Montclair argues that the use of the word "said" before real estate in the portion of the paragraph above quoted refers to that part of the real estate, personal property and works which the municipality has attempted to purchase, and that it is entirely optional with the municipality as to whether or not all or any part of the tangible property is condemned and all or a part or none of the corporate rights and franchises. The statute is not easy of construction. It is not necessary for us to decide this question, but we feel there is much force in the contention of the prosecutor. A company may be perfectly willing for good reasons to sell a part of its property and some of its franchises. When it sells, it decides what part of its property and franchises it is willing to sell. Its act is voluntary. There may be reasons why a company could sell a part of its property and franchises and still continue to function and profitably engage in business. If a municipality is given the power to condemn a part only of the property and some of the corporate rights and franchises, a water company might find itself after the condemnation proceedings in the position of being unable to function, or to function unprofitably, because of the loss of the property condemned, and its inability to procure other customers in the place of those lost through the condemnation proceedings.

The proceedings under review will be set aside, with costs.